393 So.2d 183 (1980)
Nicholas BROCATO and Linda K. Brocato
v.
Dr. Anthony B. LEGGIO et al.
No. 13751.
Court of Appeal of Louisiana, First Circuit.
November 10, 1980.
Rehearing Denied January 26, 1981.
Writ Refused April 6, 1981.
L. B. Ponder, Jr., Amite, for plaintiffs-appellants Nicholas Brocato and Linda K. Brocato.
Frank W. Middleton, Jr., Baton Rouge, for defendant-appellee Dr. Anthony B. Leggio.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
This is a medical malpractice suit. From a trial court judgment absolving the defendant doctor of liability, the plaintiff brings this appeal.
Mrs. Linda Brocato underwent a tubal ligation performed by the defendant, Dr. Anthony B. Leggio, on November 11, 1977. She discovered she was pregnant in June, 1978, and delivered a baby girl in December. She filed this suit claiming that Dr. Leggio negligently performed the operation.
In appealing, appellant argues the trial judge erred in not finding negligence on the part of defendant, in not finding a breach of contract, and in not applying res ipsa loquitur.

NEGLIGENCE
The Pomeroy system of tubal ligation was used in the operation. Testimony at trial showed that this system is used almost exclusively in the Baton Rouge-New Orleans area and is used about 90 per cent of the time throughout the nation. Under the Pomeroy system a small segment of each fallopian tube is removed and the remaining ends are ligated. The incised segments are sent to a pathology lab where technicians can positively identify them as fallopian tube pieces. The identification confirms to the physician that the proper tubes have been cut. Such a positive identification was made in this case; and the pathologist testified that lumen or the tubal canal was present in the segments forwarded to the lab.
*184 The testimony also indicated that there is a known failure rate in the Pomeroy method of tubal ligation. Failure occurs when the ligated ends of the fallopian tubes recanalize. In such a case pregnancy can occur.
The preponderance of the testimony shows that Dr. Leggio conducted the operation in accordance with the care and standards generally accepted and used by physicians of his specialty. La.R.S. 9:2794(A); Ardoin v. Hartford Accident and Indemnity Co., 360 So.2d 1331 (La.1978). There is no question that he cut the fallopian tubes. The pathologist report showed conclusively that both tubes had been severed. The fact that there is a known failure factor in this type of operation and the fact that there was no evidence to show any negligence on the part of Dr. Leggio convinces us that the trial court correctly decided this case.

BREACH OF CONTRACT
Mrs. Brocato also claims Dr. Leggio breached his contract to perform a successful tubal ligation, i. e., one which would result in permanent sterilization. In this connection she contends Dr. Leggio guaranteed success in the operation and in fact told her the operation had been successful.
Mrs. Brocato and her husband both signed a "consent to sterilization" statement prior to the operation which provided in part:
"It has been explained to me that this operation is intended to result in sterility although this result has not been guaranteed. I understand that a `sterile' person is not capable of becoming a parent; i. e., that I may be unable to conceive or bear children. I voluntarily request the operation and understand that if it proves successful, the results may be permanent."
Dr. Leggio testified that he never guaranteed that the operation would be 100 per cent successful in the sense that there would be no chance in the future for Mrs. Brocato to become pregnant. The operation was successful, he said, in the sense that Mrs. Brocato's fallopian tubes were cut and properly ligated. The trial judge believed the doctor's testimony that he had never guaranteed that Mrs. Brocato would not become pregnant again.
The contract between these parties called for the performance of a tubal ligation. This was in fact done. Mrs. Brocato's unfortunate pregnancy was caused by nature and not Dr. Leggio's failure to perform his contract.

RES IPSA LOQUITUR
The plaintiff also argues that the evidentiary rule of res ipsa loquitur should apply to this case, raising a presumption of negligence on the part of the defendant. This argument is untenable. The plaintiff has not shown "evidence from which reasonable men can say that on the whole it is likely that there was negligence associated with the cause of the event than that there was not." Prosser, Torts, Section 39, page 218 (4th Edition). The evidence shows that causes other than negligence could have been responsible for Mrs. Brocato's pregnancy. The plaintiff cannot get the benefit of the presumption in this case, and she must therefore prove negligence on the part of Dr. Leggio. As we found earlier, she has not done this.
Therefore, for the above and foregoing reasons, the decision of the trial court is affirmed. The plaintiff will bear the costs of this appeal.
AFFIRMED.